**WESTERN GEOPHYSICAL COMPANY OF AMERICA, INC., Plaintiff-Appellee,**

v.

**BOLT ASSOCIATES, INC., Defendant-Appellant.**

**BOLT ASSOCIATES, INC., Third-Party Plaintiff-Appellant,**

v.

**LITTON INDUSTRIES, INC., Third-Party Defendant-Appellee.**

Docket No. 72–1275.

United States Court of Appeals, Second Circuit.

Argued May 9, 1972.

Decided June 5, 1972.

Roland T. Bryan, Bryan, Parmelee, Johnson & Bollinger, Stamford, Conn. (Robert E. Hillman, and Prescott W. May, Stamford, Conn., of counsel), for appellant.

Wiggin & Dana, New Haven, Conn. (William J. Doyle and Shaun S. Sullivan, New Haven, Conn., of counsel), for plaintiff and third-party defendant-appellees.

Before FRIENDLY, Chief Judge, and MOORE and ANDERSON, Circuit Judges.

FRIENDLY, Chief Judge:

For the second time, a motion to dismiss an appeal in this action, brought in the District Court of Connecticut, takes us into the esoterica of federal appellate jurisdiction. See Western Geophysical

Company of America v. Bolt Associates, Inc., 440 F.2d 765 (2 Cir. 1971). Familiarity with our earlier opinion will be assumed.

After dismissal of Bolt's first appeal for lack of jurisdiction, the action was tried, except for the patent issues raised by the fifth counterclaim, see 440 F.2d at 768, the antitrust issues raised in the sixth counterclaim, id. at 768–769, and, at Bolt's request, the third and fourth counterclaims alleging that Western and Litton conspired to "group boycott" Bolt in violation of the antitrust laws. On February 15, 1972, Chief Judge Blumenfeld filed a comprehensive memorandum of decision constituting his findings of fact and conclusions of law. He ruled in favor of Western on its claim for damages for Bolt's termination of an exclusive license for pneumatic acoustical repeater (PAR) air guns having a pressure chamber volume in the size ranges of from 10 to 200 cubic inches.[1] In doing so he rejected Bolt's principal contention, namely, that Western had not fulfilled its obligation to "use its best efforts to promote world-wide licensing and use of the licensed apparatus to government and non-profit institutions during the first two years of this Agreement and thereafter, or at such earlier time as WESTERN may elect, to all other possible sub-licensees of such apparatus," as well as a series of equitable and anti-trust defenses. He also sustained Western's claim for damages for Bolt's refusal to enter into a similar license agreement for PAR devices in excess of 200 cubic inches. On the antitrust counterclaims that had been tried the judge said that Bolt had "offered no evidence of a purpose or intent on the part of Western or Litton to exclude competition by suppressing the PAR," and also expressed doubt about Bolt's standing. The judge thus concluded that, except for the reserved counterclaims, all issues save the amount of damages should be resolved in favor of Western; on that basis he determined there was no just reason for delay, F.R.Civ.P. 54(b), and

directed that judgment be entered in favor of Western to recover its damages and costs on the complaint and on the first counterclaim, and in favor of Western and Litton dismissing the second counterclaim. He then proceeded to conclude that issues dispositive of the reserved third, fourth and sixth antitrust counterclaims against Western and Litton had been necessarily determined by him and, again finding no just reason for delay, directed that judgment be entered dismissing these. This disposed of the case with two exceptions—the fifth counterclaim, for patent infringement, which all agree to be a distinct claim properly severed by the Rule 54(b) certificate, and determination of Western's damages. Judgment in accordance with the memorandum of decision was entered.

Bolt took a timely appeal to this court. Western and Litton moved to dismiss for lack of jurisdiction. Bolt moved in the district court to stay the proceeding for the computation of damages pending determination of the appeal. The judge denied the motion and appointed a United States magistrate as special master to hear and report. Bolt then moved this court for a stay of the hearing before the magistrate.

■ If it were not for the portions of the dismissed counterclaims seeking injunctions, it would be rather clear that the motion for dismissal should be granted. The court had not finally determined the respective rights and liabilities of Western and Bolt since it had not fixed the damages. See Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); Petrol Corp. v. Petroleum Heat & Power Co., 162 F. 2d 327 (2 Cir. 1947); United States v. Burnett, 262 F.2d 55 (9 Cir. 1959); and other decisions too numerous to mention. If history, precedent or principle left any ground to doubt that a judgment determining liability but not fixing damages is not final under 28 U.S.C. § 1291, this would be removed by the provisions

---

1. Western withdrew its prayer for specific performance.

of 28 U.S.C. § 1292(a) (3) and (4) authorizing appeals from "interlocutory decrees . . . determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed," and "judgments in civil actions for patent infringement which are final except for accounting." The certificate under Rule 54(b) is therefore unavailing as between Western and Bolt with respect to Western's claims. "The District Court *cannot*, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of § 1291." Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (Emphasis in original).

While this reasoning is not dispositive of the appealability of the dismissal of Bolt's counterclaims against Western and Litton, which the district court also certified, see Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956),[2] we doubt that the district court would have certified the counterclaims alone if it had realized that its disposition of Western's contract claims could not be made appealable by action under Rule 54(b). In any event, under the circumstances of this case, we must find certification of the counterclaims to have been an abuse of discretion. Sears, Roebuck & Co. v. Mackey, *supra*, 351 U.S. at 437, 76 S.Ct. 895; Cold Metal Process Co. v. United Engineering & Foundry Co., *supra*, 351 U.S. at 452, 76 S.Ct. 904; Panichella v. Pennsylvania Railroad Co., 252 F.2d 452, 455 (3 Cir. 1958); Campbell v. Westmoreland Farm, Inc., 403 F.2d 939, 942 (2

Cir. 1968); see generally 6 Moore, Federal Practice ¶ 54.41 [3]. Bolt's antitrust defenses and counterclaims were inextricably intertwined with its contention that Western had failed to use its best efforts to license the PAR gun to its competitors. Thus, Western's claims and Bolt's counterclaims are so closely related that piecemeal appeals are inappropriate. Gaetano Marzotto & Figli, S. P. A. v. G. A. Vedovi & Co., 28 F.R.D. 320 (S.D.N.Y.1961); see 6 Moore, Federal Practice ¶¶ 54.35 [1], 54.41 [3]. Moreover, Rule 54(b) requires the district judge, before entering judgment, to make a finding that there is "no just reason for delay." As we said in Campbell v. Westmoreland Farm, Inc., *supra*, 403 F. 2d at 942, "there must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal." Bolt has failed to demonstrate any hardship or injustice that an immediate appeal would alleviate, other than the expense of a hearing on damages which a reversal would make unnecessary. Of course, this is not enough.

Not seriously challenging the foregoing analysis, apellant asserts it to be irrelevant. Bolt rests its argument against dismissal primarily on the ground that its third, fourth and sixth counterclaims demanded injunctions and the statement in our earlier opinion that "if Bolt had asserted only one counterclaim seeking injunctive relief and this had been based solely on § 7 of the Clayton Act, an order striking the counterclaim for failing to state a claim on which relief could be granted or rendering summary judgment against Bolt would have been appealable under 28 U.

2. The Court in the *Cold Metal Process* case held appealable an adjudicated claim where an unadjudicated counterclaim remained, whether the counterclaim was compulsory or permissive. The counterclaim must in fact be a counterclaim and not merely a defense to plaintiff's action. United States Plywood Corp. v. Hudson Lumber Co., 210 F.2d 462 (2 Cir. 1954); Flynn & Emrich Co. v. Greenwood, 242 F.2d 737 (4 Cir.), cert. denied, 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957); see 6 Moore, Federal Practice

¶ 54.35 [1]. Bolt's claims for damages under the antitrust laws, while arising from the same facts as Western's contract claims, apparently satisfy this requirement; there thus exists the required multiplicity of claims for relief. See Rieser v. Baltimore & Ohio Railroad Co., 224 F.2d 198, 199 (2 Cir. 1955), cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956); Campbell v. Westmoreland Farm, Inc., 403 F.2d 939, 941 (2 Cir. 1968).

S.C. § 1292(a) (1)." 440 F.2d at 770. The Rule 54(b) certificate was therefore as needless as in Telechron, Inc. v. Parissi, 197 F.2d 757, 759 (2 Cir. 1952). Facing up to the fact that this court could not pass intelligently on the propriety of the dismissal of the counterclaims seeking injunctive relief without considering Western's contract claim and the defenses to it, Bolt argues that, having jurisdiction over its § 1292(a) (1) appeal from the denial of an injunction, we can also consider the otherwise unappealable order sustaining Western's contract claims but not determining the damages. For this it cites Stewart-Warner Corp. v. Westinghouse Electric Corp., 325 F.2d 822, 826 (2 Cir. 1963), cert. denied, 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964); and Semmes Motors, Inc. v. Ford Motor Company, 429 F.2d 1197, 1201 (2 Cir. 1970).

Assuming without deciding that Bolt's position might have merit in a proper case, we encounter the troublesome question whether the rejection of its counterclaims constituted an interlocutory order refusing an injunction within the meaning of 28 U.S.C. § 1292(a) (1). Decisions have established that the mere labeling of a pleading as a counterclaim is not controlling. United States Plywood Corp. v. Hudson Lumber Co., 210 F.2d 462 (2 Cir. 1954); Flynn & Emrick Co. v. Greenwood, 242 F.2d 737 (4 Cir.), cert. denied, 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957). While it may be true that Bolt's counterclaims requesting damages presented actual counterclaims, and not simply defenses to Western's contract claims, see note 2, *supra*, its requests for injunctive relief stand differently. In light of what transpired at the trial it seems clear, as it was not when the case was previously

here at the pleading stage, that Bolt's claim for injunctive relief under the antitrust laws added nothing of substance. A conclusion that Western had suppressed Bolt's invention would have meant a dismissal of its claim for wrongful termination of the license and there would be nothing to enjoin under the antitrust laws. On the other hand the conclusion that Western had not engaged in such conduct and was thus entitled to damages for Bolt's termination, coupled with Western's withdrawal of any claim for specific performance, see note 1, equally mooted Bolt's claim for an injunction. See Bennell Realty Co. v. E. G. Shinner & Co., 74 F.2d 491 (7 Cir. 1936), cert. denied, 302 U.S. 693, 58 S. Ct. 12, 82 L.Ed. 535 (1937).

In considering the application of § 1292(a) (1) to borderline cases like the instant one,[3] we must be ever mindful that it was intended as a narrow exception to the policy of the basic final judgment rule, "a wisely sanctioned principle against piecemeal appeals governing litigation in the federal courts." Sears, Roebuck & Co. v. Mackey, *supra*, 351 U. S. at 441, 76 S.Ct. at 902 (Frankfurter, J., concurring and dissenting). The great advantages of that policy in the administration of federal justice dictate against a reliance on the strict letter of § 1292(a) (1) which would cause the exception to encroach unduly upon the rule. Of course, there is some surface attraction in Bolt's contention that a reversal would save both parties the expense of what may be a fruitless hearing for the computation of damages. But that argument would exist equally in a case where the defendant had not formally sought injunctive relief, and the contention would fly in the face of § 1291 and the provisions of § 1292(a)

---

3. Lurking in the background is the uneasy fit of the rule of General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932), that a *final* disposition of a request for an injunction meets the statutory description when other issues remain pending, a problem the Supreme Court may some day wish to reconsider in light of the difficulties the inferior courts have had in applying the *General Electric* rule. See Stewart-Warner Corp. v. Westinghouse Electric Corp., supra, 325 F.2d at 829–830 (dissenting opinion); Western Geophysical Company of America v. Bolt Associates, Inc., *supra*, 440 F.2d at 769–770.

(3) and (4) allowing interlocutory appeals from determinations of liability in two classes of cases not including this one. In a case where the hearing on damages will be truly prolonged, and the judge considers his ruling on liability to present "a controlling question of law as to which there is substantial ground for difference of opinion," a permissive interlocutory appeal under 28 U.S.C. § 1292(b) is available, see Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 604–605, (2 Cir.), cert. granted, Hughes Tool Co. v. Trans World Airlines, Inc., 379 U.S. 912, 85 S.Ct. 261, 265, 13 L. Ed.2d 184 (1964), cert. dismissed as improvidently granted, 380 U.S. 248, 249, 85 S.Ct. 934, 13 L.Ed.2d 817, 818 (1965). No application for such relief was made here and, since the decision seems to have rested primarily on a determination of fact, it is exceedingly doubtful that a certificate could properly have been issued if it had been.

The motion to dismiss the appeal is granted. The motion to stay the hearing on the amount of damages is denied.