*Sharon Saunders v. Steven Gilman, et al.*, No. 20, September Term, 2024, Opinion by Killough, J.

**APPELLATE JURISDICTION – INTERLOCUTORY APPEALS – ORDER DECLARING ADVERSE POSSESSION OF PROPERTY**

An interlocutory order declaring that one party obtained title to disputed real property through adverse possession is an exception to the final judgment rule. The interlocutory order concerning the possession of property is immediately appealable under Maryland Code, Courts & Judicial Proceedings Article ("CJP") § 12-303(1).

**APPELLATE JURISDICTION – INTERLOCUTORY APPEALS – ORDER REQUIRING CONVEYANCE OF PROPERTY**

An interlocutory order that directs a party claiming title ownership of real property to prepare a deed reflecting title ownership in another party is an exception to the final judgment rule and is immediately appealable under CJP § 12-303(3)(v).

Circuit Court for Baltimore County
Case No.: C-03-CV-20-002197
Argued: January 6, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 20

September Term, 2024

SHARON SAUNDERS

v.

STEVEN GILMAN, ET AL.

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

Opinion by Killough, J.

Filed: May 22, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises out of an interlocutory order concerning the adverse possession of disputed property entered in the Circuit Court for Baltimore County. The disputed property is a parcel of land situated at the border of adjoining properties in Owings Mills, Maryland. On October 6, 2022, the Circuit Court for Baltimore County declared the disputed property "to be the real property" of the Respondents – husband and wife Steven and Ellen Gilman (the "Gilmans") – "who are declared the absolute owners of said property by adverse possession" ("October 6 Order"). The court further ordered the Gilmans to "prepare an amended deed and an amended plat" and file it "among the land records of Baltimore County[.]"

The Petitioner, Dr. Sharon Saunders, appealed the October 6 Order to the Appellate Court. The Appellate Court, however, dismissed the appeal, holding that the October 6 Order was not a final order and that none of the enumerated exceptions listed in Courts & Judicial Proceedings Article ("CJP") § 12-303 applied in this case. *Saunders v. Gilman, et al.*, No. 0463, Sept. Term, 2022, 2024 WL 1003289, at *2 (Md. App. Ct. Mar. 8, 2024). We granted certiorari to consider the following questions:

1. Did the Appellate Court err when it concluded that no exception to the final judgment rule applies and that it lacked appellate jurisdiction?

2. Does Section 12-303(3)(v) of the Courts and Judicial Proceedings Article permit an immediate appeal from an order finding adverse possession of real property before final judgment has been entered?

For the reasons that follow, we answer both questions in the affirmative. We hold that an order declaring a party the "absolute owner" of real property by adverse possession and ordering preparation of a deed showing title in another party is immediately appealable

under CJP §§ 12-303(1) and 12-303(3)(v). Because the Appellate Court erred in dismissing Dr. Saunders's appeal, we reverse and remand the case for the Appellate Court to address the merits of Dr. Saunders's appeal.

**I.**

**A.**

The following background provides context regarding the ownership and development of the property in dispute. Dr. Saunders's property is located at 2310 Cavesdale Road, Owings Mills, Maryland. The Gilmans' property is next door at 2312 Cavesdale Road, Owings Mills, Maryland. The land at issue lies at the border of the two properties, stretching approximately 541 feet long from Cavesdale Road to the rear of the properties, with an average width of about 16.5 feet ("Disputed Property").

In 1972, the Gilmans purchased five lots of unimproved real property on Cavesdale Road that had been subdivided and designated as lots 12, 13, 14, 15, and 21. The lots were thickly wooded. The same year, the Gilmans improved each lot by constructing a residential property. The Gilmans built their home on lot 12, which is rectangular in shape and adjoins lot 13, also rectangular in shape. In 1973, the Gilmans sold lot 13 to Dr. Saunders' deceased spouse, Elijah Saunders and his then-wife Monzella Saunders.

That same year, the Gilmans planted a row of fir trees along the property line they shared with Dr. Saunders. The Gilmans believed the land used to plant the fir trees was on their property; however, as later determined by the circuit court, the trees were planted on Dr. Saunders's property. The Gilmans maintained the fir trees annually and continued to

2

expand the pachysandra beds toward their home. As the years progressed, the Gilmans possessed the Disputed Property by landscaping the area, assuming they owned the land.

Elijah and Monzella Saunders lived together on the property until 1993 when Monzella Saunders passed away. Elijah Saunders married Dr. Saunders in 1996 and in 1998 he transferred the property located at 2310 Cavesdale Road to himself and Dr. Saunders as tenants by the entireties.[1] Elijah Saunders and Dr. Saunders lived on the property together until his death in 2015. The Gilmans continued to maintain the Disputed Property in the manner described above and, in April 2018, constructed a fence on it.

In October 2019, Dr. Saunders commissioned a property survey. After the survey was completed, Dr. Saunders placed surveyor markers encircling the Disputed Property. Dr. Saunders also instructed the Gilmans to stop using the Disputed Property, tear down the existing fence, remove the fir trees, and remove a swale that had been constructed on the Disputed Property.

## B.

In May of 2020, Dr. Saunders filed suit against the Gilmans in the Circuit Court for Baltimore County. Count one sought a declaratory judgment under Maryland Code Ann., Real Property Article, Section 14-111(c) to "declare . . . the boundary between the Saunders Property and the Gilman Property as set forth" in a property survey commissioned by Dr.

---

[1] A "tenancy by the entirety" is a type of joint tenancy held by spouses in Maryland in which "each joint tenant owns an undivided share in the whole estate[.]" *Downing v. Downing*, 326 Md. 468, 474 (1992). In a tenancy by the entirety, there is a right of survivorship where title passes to one spouse upon the death of the other. *See Marburg v. Cole*, 49 Md. 402, 411 (1878) ("They are each [seized] of the entirety, and the survivor takes the whole.").

3

Saunders. Counts two through five sought monetary damages in tort, under the theories of trespass, conversion, and intentional infliction of emotional distress. Count six sought a final injunction to specify the boundary line between the properties and prohibit the Gilmans from entering or disturbing Dr. Saunders's property. The Gilmans filed a counter-complaint, alleging adverse possession in count one, and tort claims in counts two through four under theories of intentional infliction of emotional distress, intrusion upon seclusion, and nuisance.

On the Gilmans' motion, the circuit court severed the equity claims from the tort claims and proceeded to a five-day bench trial on the equity issues beginning February 15, 2022. On April 29, 2022, the trial court delivered an oral ruling, finding that neither party knew the true boundary line and that the Gilmans satisfied the elements of adverse possession over the Disputed Property.

In its October 6 Order, the circuit court denied Dr. Saunders's claim for a declaratory judgment under Section 14-111(c) of the Real Property Article, and instead granted the Gilmans' claim for adverse possession of the Disputed Property. The court found that "[t]he Gilmans' Exhibit 10C.1 is declared an accurate metes and bounds description of the adversely possessed ground" and that those metes and bounds "are accurately described in Exhibit 10C.2," which "depicts the adversely possessed ground as the hashed-marked area." It further ordered that "[t]he Gilmans shall prepare an amended deed and an amended plat" for filing in the Baltimore County land records, with all costs borne by the Gilmans. Dr. Saunders thereafter filed a timely appeal.

4

The Appellate Court, acting sua sponte, raised the issue of its jurisdiction and dismissed the appeal in an unreported opinion, concluding that the October 6 Order was not a final judgment and that no exception under CJP § 12-303 applied. *Saunders*, 2024 WL 1003289, at *1-2. Dr. Saunders subsequently filed a motion for reconsideration, asserting that § 12-303(3)(v) authorized an immediate appeal. The intermediate appellate court denied that motion for reconsideration.

## II.

Whether an appellate court has jurisdiction over a case is a question of law that this Court reviews de novo. *See Rowe v. Maryland Comm'n on Civil Rights*, 483 Md. 329, 340 (2023) (citing *Mayor & City Council of Balt. v. ProVen Mgmt., Inc.*, 472 Md. 642, 664 (2021)). "To ascertain the meaning of a statute, we follow the familiar rules of statutory construction." *MCB Woodberry Dev., LLC v. Council of Owners of Millrace Condo., Inc.*, 253 Md. App. 279, 305-06 (2021). As this Court has explained, "we begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates the interpretation of its terminology." *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (internal quotations omitted). If the plain language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, a court's inquiry as to the legislative intent ordinarily ends, and the statute is applied as written, without resort to other rules of construction. *See Agnew v. State*, 461 Md. 672, 679 (2018).

## III.

In Maryland, adverse possession is a legal doctrine by which a claimant may acquire title to land despite lacking record ownership. To establish ownership by adverse

5

possession, a claimant must demonstrate possession of the property for the statutory period of twenty years. CJP § 5-103(a)(1) (establishing a twenty-year limitations period for "an action for recovery of possession of . . . land"). Such possession must be "actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted" for the entire twenty-year period. *White v. Pines Cmty. Improvement Ass'n, Inc.*, 403 Md. 13, 36 (2008) (citations omitted).

Adverse possession can divest any right to property held by the title landowner. As this Court explained in *Safe Deposit & Trust Co. of Baltimore v. Marburg*:

> By adverse possession of land for the statutory period of limitation the adverse holder acquires a title in fee simple, which is as perfect as a title by deed. Its legal effect is, not only to bar the remedy of the owner of the paper title, but to divest his estate, and vest it in the party holding adversely for the required period of time, so that he may maintain an action of ejectment for the recovery of the land even as against the holder of such paper title who has ousted him.

110 Md. 410, 416-17 (1909) (quoting Volume 1 of The American and English Encyclopedia of Law, 883). The October 6 Order declared that the Gilmans obtained fee simple title to the Disputed Property through adverse possession, divesting Dr. Saunders of her deed-based claim of ownership. Dr. Saunders filed an immediate appeal of the circuit court's decision, but the Appellate Court dismissed her appeal as interlocutory, concluding that Dr. Saunders's appeal did not fall within any of the enumerated exceptions that allow for the appeal of an interlocutory order listed in CJP § 12-303. *See Saunders*, 2024 WL 1003289, at *2. We disagree – as do all parties to this appeal. For the reasons stated below, we hold that an interlocutory order declaring that a party has obtained ownership by adverse possession over real property is immediately appealable pursuant to

6

CJP § 12-303(1), and an order directing a party to prepare a deed transferring ownership of property from another party is immediately appealable pursuant to CJP § 12-303(3)(v).

**A.**

Maryland's restrictive approach to interlocutory appeals reflects a longstanding policy favoring the final judgment rule. "It is well settled that, 'to be appealable, an order or judgment ordinarily must be final.'" *Abner v. Branch Banking & Tr. Co.*, 180 Md. App. 685, 689 (2008) (quoting *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 298 (2001)). To qualify as a "final judgment," an order must either "determine and conclude the rights involved" or "deny the appellant the means of further prosecuting or defending [their] rights and interests in the subject matter of the proceeding." *Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. 289, 299 (2015) (emphasis omitted) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989)). As Maryland Rule 2-602(a) provides, an order that adjudicates fewer than all the claims in an action—or that resolves the rights and liabilities of fewer than all the parties—is not a final judgment.

There are only three exceptions to the final judgment requirement: (1) appeals from interlocutory orders specifically authorized by statute; (2) immediate appeals permitted under Maryland Rule 2-602(b); and (3) appeals permitted under the common law collateral order doctrine. *See Salvagno v. Frew*, 388 Md. 605, 615 (2005). This case involves the first exception—an appeal from an interlocutory order authorized by statute.

There are two statutory exceptions that are applicable to the interlocutory order entered by the circuit court in this case. The first is CJP § 12-303(1), providing that:

7

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

(1) *An order entered with regard to the possession of property with which the action is concerned* or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order.

CJP § 12-303(1) (emphasis supplied).

The second provision is CJP § 12-303(3)(v), providing in pertinent part, that:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case.

\* \* \*

(3) An order:

\* \* \*

(v) For the sale, *conveyance, or delivery of real or personal property* or the payment of money, or the refusal to rescind or discharge such an order, unless the delivery or payment is directed to be made to a receiver appointed by the court.

CJP § 12-303(3)(v) (emphasis supplied).

The Appellate Court concluded—without explanation—that the exceptions in CJP § 12-303 do not apply here. *See Saunders*, 2024 WL 1003289, at *2 n.4. Because jurisdiction in this case turns on the proper interpretation and application of CJP § 12-303, we briefly review the history and purpose behind Maryland's limited allowance for interlocutory appeals.

**B.**

The Appellate Court in *Della Ratta v. Dixon*, 47 Md. App. 270 (1980), traced the roots of CJP § 12-303 to early equity practice, where interlocutory appeals were initially

8

allowed for orders conveying property or directing payment. "The roots of [CJP §] 12-303 are deep; they wander back into the early development of English common law and chancery practice and spring from one of the many differences between those parallel judicial systems, that pertain to the right to appeal." *Della Ratta*, 47 Md. App. at 278. "The right of appeal from equity decrees was specifically conferred in Maryland by Act of the Provincial Assembly" in the early 1700's. *Id.* The 1721 Act stated:

> [t]hat from and after the end of this present session of assembly, it shall and may be lawful for any person or persons that shall conceive themselves aggrieved by any decree of the chancery court, to have an appeal to the governor and council of this province for the time being, wherein each member shall have a full voice.

*Id.* at 278-79 (quoting Acts of 1721, ch. XIV).

It was not until 1830 that the right to appeal decisions from the courts of equity was restricted to final decrees, and the earlier version of what we know today as CJP § 12-303 began to take shape. *Della Ratta*, 47 Md. App. at 280. The 1830 Act stated:

> Provided always, that the execution of any decree or order of the chancery, or any county court for the sale, conveyance, or delivery of possession, of real or personal property, or the payment of money, or the bringing of money into court, or the appointment of a receiver, or the opening of any way public or private, from which the right of an immediate appeal is taken away by this act, shall not be suspended or staid, unless a prayer for an appeal be entered on the docket, or filed among the proceedings in the cause, and bond in such penalty as the chancellor, or county courts, (as the case may be) may prescribe, with good and sufficient security, to be approved by the chancellor or county court, shall be given.

1830 Md. Laws, ch. 185. As noted by the Appellate Court in *Della Ratta*, this provision marked "the first apparent delineation of these special types of interlocutory equity orders-including an order" for the conveyance or delivery of real property. *Della Ratta*, 47 Md.

9

App. at 280 (referencing that interlocutory appeals for the payment of money were allowed with the 1830 Act).

"By 1841 Md. Laws, ch. 11, the General Assembly amended the 1830 Act[,]" providing:

> [t]hat so much of the first section of the said act, as takes away the immediate right of appeal from any decree or order of the court of chancery, or any county court sitting as a court of equity, for the sale, conveyance or delivery of real or personal property, or the payment of money, unless such delivery or payment be directed to be made to a receiver, to be appointed by such court, be, and the same is hereby repealed; and that from any such decree or order heretofore passed, or hereafter to be passed, the right of an immediate appeal is hereby given.

*Id.* at 280-81. This amendment confirmed the immediate appealability of certain interlocutory orders in equity, and the 1860 Code—the first modern codification of Maryland law—made explicit that these provisions applied only to equity proceedings. The statutes were codified under Article 5 in the subtitle "Appeals From Courts of Equity." *Id.* at 281. Sections 20 and 21 provided, in relevant part:

> 20. An appeal shall be allowed from any final decree, or order in the nature of a final decree, passed by a court of equity; Provided, such appeal be taken within nine months from the time of making such decree or order, and not afterwards, unless it shall be alleged on oath that such order was obtained by fraud or mistake.

> 21. An appeal may also be allowed in the following cases, to wit: From any order granting an injunction, or from a refusal to dissolve the same; or an order appointing a receiver, the answer of the party appealing being first filed in the cause; from an order dissolving an injunction; from an order for the sale, conveyance, or delivery of real or personal property, or the payment of money, unless such delivery or payment be directed to be made to a receiver appointed by such court; or from an order determining a question of right between the parties, and directing an account to be stated on the principle of such determination.

10

*Id.* (quoting 1860 Md. Code Art. 5, §§ 20, 21).

The statute remained largely unchanged until 1957, when the Legislature recodified the laws relating to judicial proceedings. *Della Ratta*, 47 Md. App. at 282 (citing 1957 Md. Laws, ch. 399). Although the language was modernized, "the substance [was] more or less left alone." *Id.*

In 1973, the General Assembly enacted the Courts & Judicial Proceedings Article during the Extraordinary Session of the General Assembly and, for the first time, § 12-303 referenced orders from the "circuit court" as opposed to orders of a court of equity. *See id.* at 283. The statute first appeared in its current form in 1985. *See* CJP § 12-303 (1985 Supp.). While the General Assembly made amendments to the statute in 1997, 1998, 2002, and most recently in 2023, the statute has remained largely unchanged since 1985. *See* Acts 1997, c. 558, § 1, eff. Oct. 1, 1997; Acts 1998, c. 21, § 1, eff. April 14, 1998; Acts 2002, c. 19, § 1, eff. April 9, 2002; Acts 2023, c. 5, § 1, eff. Oct. 1, 2023; Acts 2023, c. 6, § 1, eff. Oct. 1, 2023.

## C.

This history confirms that Maryland's statutory exceptions for interlocutory appeals protecting property and monetary rights are not modern innovations but the continuation of a centuries-old legal tradition. The narrow scope of these exceptions underscores the General Assembly's intent: interlocutory review remains available only where immediate appellate intervention is most necessary. Orders that merely determine liability or resolve preliminary issues ordinarily must await final judgment for appellate review. This statutory framework thus strikes a balance between efficiency and fairness, ensuring that critical

rulings with immediate and potentially irreparable effect, including those effecting immediate property transfers, are immediately appealable while preserving the final judgment principle for other disputes. *Cf. Frase v. Barnhart*, 379 Md. 100, 117 (2003) (recognizing that an interlocutory order affecting fundamental parental rights is immediately appealable).

This is such a case: an interlocutory order recognizing the Gilmans as fee simple owners of real property by adverse possession and directing the preparation and recordation of a deed, giving them the right to exercise dominion over the property, including the right to encumber or convey it. The October 6 Order therefore has immediate and potentially irreparable consequences, which is precisely the sort of potential harm the exceptions set forth in CJP § 12-303 were designed to prevent. We therefore turn first to § 12-303(1).

*CJP Section 12-303(1)*

CJP § 12-303(1) provides that a party may appeal interlocutory orders "entered by a circuit court in a civil case . . . with regard to the possession of property with which the action is concerned." Although CJP § 12-303(1) does not define "possession" or "property," we find the language clear and unambiguous and must apply it according to its terms. *See Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473 (2001). Both Petitioner and Respondents agree with this conclusion.

In our view, the October 6 Order is interlocutory and concerns "the possession of property," and therefore falls squarely within CJP § 12-303(1). As the Honorable Kevin F. Arthur explains, "[a]n order 'with regard to the possession of property' typically grants a party the immediate right to exclusive control of the property." Hon. Kevin F. Arthur &

12

Sean R. Luhks, *Final Judgments on Appealable Interlocutory Orders*, in *Appellate Practice for the Maryland Lawyer: State and Federal* (6th ed. 2023) (internal citations omitted). The October 6 Order did just that. This reading is consistent with our prior decisions holding that interlocutory orders that divest a party of property rights are appealable. In *City of Baltimore v. Kelso Corp.*, 281 Md. 514 (1977), we held that we could consider an appeal from an interlocutory order dismissing the City's quick-take condemnation claim and divesting it of immediate possession. *See id.* at 517 n.2. In *Bledsoe v. Bledsoe*, 294 Md. 183 (1982), we held that an interlocutory order that granted the use and possession of the marital home was immediately appealable. *See id.* at 185 n.1. Similarly, in *Bussell v. Bussell*, 194 Md. App. 139 (2010), the Appellate Court recognized that a pendente lite order granting use and possession of a family home is immediately appealable pursuant to CJP § 12-303(1). *See id.* at 147.

*CJP Section 12-303(3)(v)*

CJP § 12-303(3)(v) provides that a party may appeal a circuit court's interlocutory order in a civil case for "the sale, conveyance, or delivery of real or personal property[.]" Similar to our analysis of CJP § 12-303(1), we conclude that CJP § 12-303(3)(v) is clear and unambiguous and must be applied according to its terms. *See Breitenbach*, 366 Md. at 473. Both Petitioner and Respondents agree with this conclusion.

In this case, the Disputed Property is real property. The October 6 Order declares that ownership of the Disputed Property had transferred from Dr. Saunders—who owned it by deed—to the Gilmans, whom the trial court declared to be the owners by adverse

13

possession. Although that portion of the order was not for the sale, conveyance, or delivery of the property, the October 6 Order also directs the Gilmans to prepare and record an amended fee-simple deed, thereby effecting a conveyance of title. Under Maryland law, "legal title is conveyed by a deed," which does not pass until recorded. *Mayor & City Council of Baltimore v. Thornton Mellon, LLC*, 478 Md. 396, 413-14 (2022). Thus, the October 6 Order is the type of interlocutory order that CJP § 12-303(3)(v) permits a party to appeal immediately to prevent irreparable harm. *See Flower World of America, Inc. v. Whittington,* 39 Md. App. 187, 192 (1978) ("The common denominator of the exceptions [in CJP § 12-303] is the irreparable harm that may be done to one party if [they] had to await final judgment before entering an appeal.").

Our conclusion regarding the applicability of CJP § 12-303(3)(v) to interlocutory orders affecting adverse possession cases is supported by Maryland case law. In *Kobrine, L.L.C. v. Metzger*, 151 Md. App. 260 (2003), *rev'd on other grounds*, 380 Md. 620 (2004), subdivision lot owners and their homeowners' association sought a declaration that they held an easement over a common area and that the purchaser was required to convey the property back to them. *See id.* at 266-68. The circuit court granted the easement and ordered the transfer of title by deed. *See id.* at 266. Before final judgment, the appellants filed a notice of appeal. *See id.* at 270. The Appellate Court held that the interlocutory appeal was permitted by statute—citing CJP § 12-303(1) (possession of property) and CJP

14

§ 12-303(3)(v)[2] (conveyance of property and the payment of money). *Kobrine*, 151 Md. App. at 271. That situation parallels the present case.

## V.

In conclusion, we hold that:

1. An interlocutory order declaring that title to disputed real property has been conveyed by adverse possession is immediately appealable under CJP § 12-303(1).

2. An interlocutory order that orders the preparation and recording of a deed conveying title to real property from one party to another party is immediately appealable under CJP § 12-303(3)(v).

> **JUDGMENT OF THE APPELLATE COURT OF MARYLAND IS REVERSED. CASE REMANDED TO THE APPELLATE COURT OF MARYLAND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THE APPELLATE COURT OF MARYLAND AND THIS COURT TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

---

[2] The intermediate appellate court erroneously cited CJP § 12-303(3)(iv)—which governs the appointment of a receiver—instead of the correct subsection, CJP § 12-303(3)(v).